# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LAVITA A. STALLINGS, ) | |
| ) | |
|        Plaintiff, ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 16-2208-JWL** |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
|        Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

Plaintiff applied for DIB, alleging disability beginning June 1, 2012. (R. 9, 108). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ's residual functional capacity (hereinafter RFC) assessment is not supported by the record evidence, that he

erroneously relied on the opinion of the consultative examiner, Dr. White, and that he improperly evaluated Plaintiff's credibility.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

3

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses each argument in the order presented in Plaintiff's Brief, and finds no error in the ALJ's decision.

## II.    Whether the Record Evidence Supports the RFC Assessed

Plaintiff first argues that "the substantial evidence of record supports a finding that Ms. Stallings is unable to perform the standing and walking required of light work."  (Pl. Br. 14).  This is so, in Plaintiff's view, because of her long history of degenerative joint disease and osteoarthritis of the knees requiring injections and oral pain medication and eventually resulting in a total replacement of her left knee, and because of her testimony of missing at least two days at work each month.  Id.  She argues the ALJ implied that her knee replacement "cured her bilateral knee pain and limitations," but that after physical therapy she was only "'modified independent' because she lacked functional knee extension during her gait," she had less than full range of motion and less than full strength in her left leg, and had not "been able to traverse a single flight of stairs or walk a distance without an assistive device."  Id. at 15 (citing R. 289, 290).  Finally, she argues that the ALJ should have limited her stooping and bending at the knees because before her surgery she frequently reported pain with bending her knees, on her last physical therapy appointment she could only bend her left knee 103 degrees, and she testified at the hearing that she was limited in bending her knee.  (Pl. Br. 15).

The Commissioner argues that the ALJ properly considered all of the evidence in assessing RFC.  She points to record evidence which supports the ALJ's RFC assessment, including minimal treatment; examination findings of abilities to squat and rise and perform other postural movements without difficulty, no effusion, no knee instability, and 4/5 strength; examination findings before left knee replacement of near normal range of motion, mild swelling, mild misalignment, ability to perform postural movements without difficulty, and absence of effusion, reported relief with injections and oral medications; improvement after left knee surgery with no instability; and normal alignment, no instability, and only slightly reduced strength in the right knee.  (Comm'r Br. 8-10).

In her Reply Brief, Plaintiff argues again that "the ALJ did not consider all of the relevant evidence of record including Ms. Stallings['s] medical history, effects of treatment, lay evidence, and recorded observations."  (Reply 1).  She once again appeals to her long history of osteoarthritis and osteoarthrosis, osteophyte spurring, patellar grinding, and knee injections, id. at 2, and she argues that her knees were extremely painful and that her right knee was doing worse after her left knee surgery.  Id. at 3.

As is usually the situation in a Social Security disability case, the record evidence here is equivocal.  There is evidence supporting a finding of "disabled" and there is evidence supporting a finding of "not disabled."  It is the ALJ's duty to weight that evidence and decide the issue of disability.  It is not enough for the claimant to point to evidence which is contrary to the ALJ's decision and assert error.  She must show that the ALJ's rationale is erroneous or that the record evidence cannot support the decision

reached.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

Here, Plaintiff has not shown erroneous reasoning or that the evidence cannot support the ALJ's decision.  The fact that Plaintiff has pain in her knees, that she had a knee replacement to help to alleviate that pain, or that she no longer has full strength or range of motion does not require a finding of disability.  What is required for disability is evidence of functional limitations--whether caused by pain or by some other factor--which preclude all substantial gainful activity.  The ALJ found that Plaintiff does not have such limitations, and the record evidence supports his determination.

Plaintiff's appeal to the notes of her last physical therapy session does not require a different conclusion.  Plaintiff's argument that she was unable to "traverse a single flight of stairs or walk a distance without an assistive device" (Pl. Br. 15) (citing R. 289), is apparently based upon the outpatient physical therapy long term goals--that Plaintiff would ambulate "community distances" with no assistive device and with no gait deviations, and that Plaintiff would "go up/down 1 flight of stairs."  (R. 289).  First, the treatment note states with regard to going up and down a single flight of stairs that the "goal [was] met."  Id.  Plaintiff is simply wrong to argue based on this physical therapy

note that she was unable to traverse a single flight of stairs.  With regard to being able to ambulate "community distances" <u>with no assistive device</u> and with no gait deviations, the treatment note indicates that the goal was "continued," not that Plaintiff would never be able to perform it.  Moreover, the treatment note does not define "community distances," and Plaintiff has not shown that the ability to walk "community distances" or otherwise without an assistive device is necessary to a finding that she is not disabled.  Finally, and most importantly, the ALJ discussed Plaintiff's use of an assistive device and noted her testimony that she never used an assistive device before her left knee surgery and that "she uses a cane primarily for her right knee, but she admitted that no assistive device was ever prescribed for her right knee."  (R. 14).  He concluded, finding, "There is little evidence that the claimant required an assistive device, except during her recovery from knee surgery."  <u>Id.</u> at 15.  Plaintiff shows no error in this finding.

Similarly, the physical therapy note's reference to a "Modified Independent" ambulation level with gait deviations due to lacking functional knee extension during gait (R. 290) does not require limitations in addition to those assessed by the ALJ.  The ALJ found that Plaintiff can only occasionally climb ramps and stairs, and that she should never climb ladders, ropes, or scaffolds, or crawl.  (R. 12).  The physical therapy notes do not define "modified independent" ambulation level and do not specify what is lacking in functional knee extension during gait.  At that time, Plaintiff had demonstrated that she was able to go up and down a flight of stairs, she was being released from physical therapy, and from what the evidence shows she was mobile at least when using a cane.

While the evidence cited might be accepted as providing additional limitations, it does not specify such limitations, such limitations are not apparent from the physical therapy notes or from the other evidence, the ALJ may not speculate regarding what such non-specific limitations are, and the evidence as a whole does not require such limitations.

Plaintiff's argument that the ALJ did not consider all of the relevant evidence is likewise unavailing. The decision reveals that the ALJ considered and provided a fair summary of all of the record evidence. Although the ALJ did not specifically mention or cite to every piece of evidence, that is not required, and Plaintiff does not point to particular, material evidence that was ignored. The ALJ stated that he had carefully considered all of the record evidence. (R. 9, 11, 12, 13). The court's general practice is to take a lower tribunal at its word when it says it has considered a matter. Hackett, 395 F.3d at 1172-73. Plaintiff presents no basis to depart from that practice here. For these reasons, and based upon the court's analysis below regarding the issues of credibility and Dr. White's medical opinion, the court finds no error in the ALJ's RFC assessment.

### III. Dr. White's Medical Opinion

Plaintiff claims error in the ALJ's evaluation of the report of a consultative examination performed by Dr. White, arguing that it was a one-time examination "without the benefit of any of Ms. Stallings's prior medical record," and that the ALJ knew that merely ten months after Dr. White examined Ms. Stallings, she received a total knee replacement. (Pl. Br. 16). The Commissioner notes that Dr. White examined Plaintiff and concluded that she had no exertional limitations, but that the ALJ

nonetheless gave Plaintiff the benefit of the doubt, found that her knee impairments were severe within the meaning of the Act, and assessed an RFC for a limited range of light work.  She points out that it is not error when an ALJ tempers the extremes of a medical opinion for the benefit of a claimant.  (Comm'r Br. 9-10) (citing Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012)).

Plaintiff has shown no error in the ALJ's evaluation of Dr. White's opinion.  As a preliminary matter, the court notes that the evidence does not support Plaintiff's assertion that Dr. White formed his opinion without the benefit of prior medical records.  Dr. White's report specifically states that he "reviewed the attached medical records."  (R. 232).  The court will not merely accept Plaintiff's assertion over the contrary statement of Dr. White.

The ALJ stated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs [(Social Security Rulings)] 96-2p, 96-5p, 96-6p and 06-3p" (R. 13), and Plaintiff does not argue otherwise.  The ALJ summarized Dr. White's report of his examination of Plaintiff and explained the weight he accorded Dr. White's medical opinion.  (R. 16).  And, he explained that he accorded no weight to the opinion of the single decisionmaker (SDM) who had decided the case at the initial level for the state disability determination service.  Id.  Plaintiff points to no medical opinion that was not evaluated.  The ALJ found that Dr. White's opinion was supported by his in-depth examination and by the preponderance of the record medical evidence and that Dr. White's opinion regarding no limitations was therefore worthy of great weight.  Id.  He

stated that he nevertheless gave Plaintiff the benefit of the doubt regarding her severe limitations and found she was restricted to light work, occasionally climbing ramps and stairs, and never climbing ropes, ladders, or scaffolds, or crawling.  Id. (citing RFC as assessed in the decision).  The fact that Plaintiff alleged pain in her knees and later received a total knee replacement to relieve that pain requires a finding of disability only if that pain was so severe as to produce physical or mental limitations precluding substantial gainful activity.  The ALJ found that it was not that severe, and the record evidence supports his finding.

## IV.    The Credibility Determination

Plaintiff claims the ALJ erred in evaluating the credibility of Plaintiff's allegation of symptoms resulting from her impairments.  She argues this is so because the ALJ mischaracterized her testimony, failed to accord appropriate weight to her "strong work history," failed to consider the reason for Plaintiff's lack of medical treatment between June 2012 and May 2014, and found, inconsistently, both that Plaintiff's allegations are only partially credible and that her willingness to undergo knee surgery suggests that her symptoms were genuine.  The Commissioner, argues that review of a credibility determination is deferential, points to the reasons given by the ALJ to find Plaintiff's allegations only partially credible, and explains how that in her view those reasons are supported by the record evidence.  She seems to admit that the ALJ's rationale relating to secondary gain is erroneous, but argues that any error in that regard is harmless because

"the ALJ gave numerous valid reasons to support his subjective symptom assessment."

(Comm'r Br. 18).

### A.    Standard for Evaluating Credibility[1]

The court's review of an ALJ's credibility determination is deferential.  It is

generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.

1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility

determinations are peculiarly the province of the finder of fact" and will not be

overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord

Hackett, 395 F.3d at 1173.

Therefore, in reviewing an ALJ's credibility determinations, the court will usually

defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392,

1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir.

1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should

---

[1]The court notes that Plaintiff cites SSR 16-03p in her arguments regarding the ALJ's credibility determination.  (Pl. Br. 17 & nn. 21, 22, 23, 24).  The Commissioner propagated SSR 16-03p regarding Evaluation of Symptoms in Disability Cases, dated March 9, 2016.  2016 WL 1119029 (March 16, 2016).  SSR 16-03p superseded SSR 96-7p, id. at *1, and was effective on March 28, 2016.  2016 WL 1237954 (March 24, 2016).  The case at issue here, however, was decided on March 24, 2015.  (R. 17).

SSR 16-3p was not in effect when this case was decided, the court's review is directed to the final decision made by the agency, and the court may not make a de novo determination of the case.  Nguyen v. Shalala, 43 F.3d 1400, 1404 (10th Cir. 1994).  And, Plaintiff does not explain why SSR 16-03p should be applied to this case.  Moreover, although Plaintiff cites to SSR 16-03p, it does not appear she is attempting to get the court to apply any rule of law not contained in SSR 96-7p.  The court will apply the law in effect when this case was decided by the ALJ.

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston, 838 F.2d at 1133); Hackett, 395 F.3d at 1173 (same).

### B.    The ALJ's Credibility Determinaion

The ALJ determined Plaintiff's allegations of limitations resulting from her symptoms "are not entirely credible" (R. 13), and explained his rationale in that regard. Id. at 13-16.  He noted that despite examinations showing otherwise, Plaintiff alleged she is unable to bend her knees and therefore is unable to carry anything up or down stairs. Id. at 13.  He specifically stated that he gave Plaintiff the benefit of the doubt and found that her degenerative joint disease of the knees is a severe impairment within the meaning of the Act.  Id. at 14.  He noted that at Dr. White's examination Plaintiff reported knee pain at a 10 out of 10, but was able to perform postural maneuvers without difficulty, suggesting the pain allegation was exaggerated.  Id.  He noted the fact that Plaintiff underwent surgery on her left knee "suggests that the symptoms were genuine," but he found this positive factor "is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms."  Id.  The ALJ considered that Plaintiff was using a cane at the hearing, but found "little evidence that the claimant required an assistive device, except during her recovery from knee surgery."  (R. 15).  The ALJ noted that Plaintiff cared for her granddaughter at her home until August or September 2014 when the child began attending kindergarten, and that Plaintiff used her knee pain for secondary gain in an attempt to remain off work after a workplace injury. Id.  He

12

recognized that receipt of unemployment benefits is not dispositive of the ability to work, but that Plaintiff's receipt of such benefits provides the basis for an inference that Plaintiff professed an ability to work while alleging disability. (R. 16).

> C.      **Analysis**

Plaintiff primarily argues that the ALJ misunderstood and mischaracterized the evidence, and therefore reached the wrong credibility determination. This is little more than a request that the court reevaluate the credibility of Plaintiff's allegations and substitute its credibility determination for that of the ALJ. But, as noted above the court may not reweigh the evidence and substitute its judgment for that of the Commissioner, Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172, and review of the ALJ's credibility determination is particularly deferential. Wilson, 602 F.3d at 1144.

In seeking such reconsideration, Plaintiff argues that she did not testify that she could not bend her knee at all, but rather that bending her knee was limited, and that she did not testify that she never saw swelling in her knees, but rather that she never really knew they were swollen until medical personnel told her. (Pl. Br. 18). Plaintiff is technically correct in both arguments, but she misses the point of the ALJ's discussion. The ALJ's point is that the medical examinations, other than immediately following knee surgery, showed little to no limitation in Plaintiff's knee range of motion, whereas Plaintiff testified she had little ability to bend her knees and was consequently unable to carry anything up or down stairs. The evidence supports the ALJ's finding. Moreover, even if the ALJ did erroneously understand Plaintiff to argue that she could not bend her

knees at all, that error, if any, was invited by Plaintiff.  In questioning the vocational

expert, Plaintiff's counsel asked, "If one was unable to stoop or bend at the knees, would

they [sic] still be capable of performing" Plaintiff's past work as a security guard, and the

expert responded that she would not.  (R. 44) (emphasis added).  Here, the ALJ found that

Plaintiff is able to perform her past work as a security guard, and it was necessary to

distinguish Plaintiff's implied argument that she was unable to bend at the knees.

        With regard to swelling in Plaintiff's knees, the ALJ was correct in noting that the

knee swelling was so mild that, as Plaintiff admitted, she did not observe it independently

until the medical personnel noted it.  The point the ALJ was making was not that Plaintiff

did not experience these symptoms to any degree, but that the symptoms were not as

severe as alleged, and that Plaintiff was exaggerating her symptoms and limitations.

        Similarly, Plaintiff makes much of the ALJ's note that Plaintiff "may have been

using her alleged knee pain for secondary gain" (R. 15) when she fell at work, and when

released to return to work refused to do so without a second opinion.  But the record

supports the ALJ's inference.  While Plaintiff argues that it was "not unreasonable" to

seek a second opinion because her physician had her past medical records and took "new

x-rays which revealed chronic degenerative changes in both knees" (Pl. Br. 19), her

argument demonstrates the ALJ's point, and that point is supported by the record

evidence.

        Plaintiff was working full-time when she fell and received a work injury, and she

continued to work for three months thereafter until her workplace closed.  (R. 13).  After

14

falling at work, she was seen by the workers compensation physician who prescribed 800 mg ibuprofen tablets and released her to return to work.  (R. 188).  She wanted a second opinion and went to see her primary care physician who stopped the ibuprofen and prescribed hydrocodone-acetaminophen tablets, explained to her that there was low suspicion of fracture, but nevertheless ordered x-rays at Plaintiff's request, and released her to return to work as the workers compensation physician had done.  (R. 189).

As Plaintiff admits, she had been working before her workplace fall despite pain and treatment for degenerative joint disease in the bilateral knees.  The workers compensation physician treated her for the additional pain resulting from her workplace fall, determined that the potential of further injury was minimal if any, and released her to return to work.  But, as the ALJ noted, Plaintiff used her knee pain for secondary gain to remain off work until she received a second opinion.  As Plaintiff argues, the x-rays taken by her physician revealed degenerative changes in both knees, but that information was already known to Plaintiff and to her physician, and was not the result of the workplace fall.  What is relevant in this context is that both physicians felt the low suspicion of fracture did not justify knee x-rays, and when taken, the x-rays confirmed that "[t]he bony structures appear intact and there is no evidence of fracture or displacement."  (R. 204).  While the ALJ specifically noted that the fact of seeking secondary gain "does not determine the case at hand, it is relevant to the claimant's credibility" (R. 15), and it is not error to consider it in that regard.

15

Finally, the ALJ did not make inconsistent findings by recognizing that Plaintiff's willingness to undergo surgery suggests that her symptoms are genuine while finding that her allegations of symptoms are only partially credible.  As Plaintiff's Brief suggests, the ALJ should consider a non-exhaustive list of factors in determining the credibility of a claimant's allegations of limitations resulting from her impairments.  (Pl. Br. 17); see also Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) ("the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence"); 20 C.F.R. § 404.1529(c)(3)(i-vii) (Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms).  It is clear that the ALJ here considered evidentiary factors relevant to his credibility determination.  Evidence in a Social Security disability case rarely if ever points in but one direction, and the ALJ is to be commended rather than condemned for discussing evidence which supports a finding contrary to his determination.

16

Plaintiff has shown no error in the credibility determination.  Giving it the deference it is due, the court finds no error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 7th day of April 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**